UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LAURENCE L. LAMBERT | * | CIVIL ACTION |
| VERSUS | * | NUMBER 04-2192 |
| KENNER CITY, ET AL. | * | SECTION "L" (1) |

## ORDER & REASONS

Pending before the Court is the Regional Planning Commission for Jefferson, Orleans, Plaquemines, St. Bernard, and St. Tammany Parishes' ("RPC") Motion for Summary Judgment (Rec. Doc. 36) and the City of Kenner's ("Kenner") Motion for Summary Judgment (Rec. Doc. 39). The Court heard oral argument on the motions on December 21, 2005, and took the motions under submission. For the following reasons, both motions for summary judgment are GRANTED.

## I. BACKGROUND

In 1986, the Plaintiff, Laurence L. Lambert ("Lambert"), contracted with Kenner ("Original Engineering Agreement") to perform certain engineering and design work in connection with a proposed four-lane road running along the levee at the western boundary of the City of Kenner from U.S. 61 ("Airline Highway") to the Loyola Drive interchange of I-10, including the design of a tunnel under the east-west runway at the Louis Armstrong New Orleans International Airport ("the Project"). To put it simply, Lambert was hired to build a north/south roadway running from Airline Highway to the Loyola Drive/I-10 interchange. Since the Louis Armstrong New Orleans International Airport ("the Airport") was extending its east/west



runway, the north/south roadway would have to pass underneath the runway through a tunnel.

The Original Engineering Agreement divided the Project into two stages.  The first stage consisted of preparation of construction plans, specifications, and contract documents for development of the tunnel beneath the east-west runway.  The second stage consisted of preparation of construction plans, specifications, and contract documents for the remainder of the north-south roadway to be located along the levee at the western boundary of the City of Kenner from Airline Highway to the Loyola interchange at I-10.

Each of the two stages was further divided into five phases: a preliminary phase, a design phase, a bidding phase, a construction phase, and an as-built phase.  Pursuant to the Original Engineering Agreement, Lambert completed the preliminary and design phases of the first stage.

On May 4, 1988, the Original Engineering Agreement was amended to reflect the fact that the New Orleans Aviation Board had allocated $90,000 toward the Project and, thus, Kenner and Lambert revised the Original Engineering Agreement to reflect that the work would be designed in accordance with the current design standards of Kenner, the Louisiana Department of Transportation & Development ("DOTD"), the Federal Highway Administration, the Federal Aviation Authority, and the New Orleans Aviation Board.  The amendment, however, did not effect the scope of the project.

In the early 1990s, in an effort to secure federal funding for the project, Kenner entered into an agreement with the DOTD which provided that the DOTD would undertake the bidding and construction phases of the first stage of the Project.  In turn, the DOTD awarded the construction work to Boh Brothers, Inc. ("Boh Brothers").

On July 7, 1992, as a result of the contract between the DOTD and Boh Brothers,

Lambert filed suit in the Eastern District of Louisiana against Kenner, the DOTD, and Boh Brothers seeking damages for copyright infringement, breach of contract, and other theories of liability arising out of the Project.[1]   In a counterclaim, Kenner contended that Lambert was liable to it for negligent design of the tunnel and for breach of the Original Engineering Agreement. Additionally, Kenner filed a separate lawsuit in state court for damages sustained due to the negligent design of the tunnel and for breach of the Original Engineering Agreement.

These claims were eventually settled.  Under the terms of the settlement, the Original Engineering Agreement was left as a valid enforceable contract between Lambert and Kenner, with some modifications ("Revised Engineering Agreement").  The Revised Engineering Agreement allegedly provided that Kenner was obligated to have Lambert perform all of the remaining engineering work on the Project and provided a formula for the imposition of stipulated damages if Kenner breached the terms of the Revised Engineering Agreement.  Due to insufficient funding, however, the Project was postponed.

In 1998, the RPC sought federal funding so that the Project could be resumed.  They ultimately received federal funds designated for the completion of the Project.

Over the course of four and a half years, the funds designated for the completion of the Project had built up substantially.  These funds, totaling more than $5,000,000, however, would be rescinded to the federal government if nothing was done.  Walter R. Brooks, Executive Director of the RPC, called a meeting with the DOTD, Kenner, and Jefferson Parish to see if anything could be done with the funds.

---

[1] *Laurence L. Lambert d/b/a/ Laurence L. Lambert & Associated, Engineers v. The City of Kenner and the Louisiana Department of Transportation and Development*, CA 92-2287 (Judge Livaudais).

At the meeting, the DOTD desired to conduct a feasibility study prior to commencing any work on the Project.  In fact, federal regulations required the completion of a feasibility study. Accordingly, on April 10, 2002, the DOTD and the RPC entered into a contract for obtaining the feasibility study.

Pursuant to this contract, the RPC initiated a consultant selection process, which had been reviewed and approved by the DOTD.  As part of this process, the RPC advertised for bids for the feasibility study.  Lambert, who had been retired since 1995, did not bid on the Project. Instead, the RPC hired Richard C. Lambert Consultants, L.L.C. ("Richard Lambert") to conduct the feasibility study.[2]

The objective behind the RPC and Richard Lambert's contract was the development of three to four conceptual alternatives and the comparison of these alternatives' characteristics, including access to existing and proposed land use, traffic level of service, geometric feasibility, apparent rights-of-way, estimated capital costs, and any obvious environmental impacts.  In discharging its contractual duties, Richard Lambert was obligated to review previous work describing proposed land use and transportation improvements in the project area.  At the end of the feasibility study, Richard Lambert was obligated to prepare a final report documenting the study's findings and recommendations and identifying a preferred alternative for further refinement and costing.

Before entering into the contract with Richard Lambert, the RPC was required to get approval from the DOTD, the Federal Highway Administration, and obtain matching funds of twenty percent from a local governmental agency.  Kenner provided the required matching funds,

---

[2] Richard C. Lambert is the brother of Lambert.

and the RPC got the necessary approvals.

On October 25, 2004, Richard Lambert submitted his final report.  In the report, Richard Lambert developed and compared eight alternatives.  Alternative 8 was the preferred alternative.  Alternative 8 recommended turning over the tunnel, which was the subject of the first stage of the Project, to the Airport and converting the present airport access road on the eastern border of the airport to the north-south roadway.  This alternative, if implemented, would comprise a complete abandonment of the Project.

On August 4, 2004, Lawrence L. Lambert filed suit against the RPC, Kenner, and the DOTD.  In his complaint, Lambert asserted a claim against Kenner for breach of contract, a claim against the RPC for intentional interference with a contract, and a claim against the DOTD for intentional interference with a contract.

In his breach of contract claim against Kenner, Lambert alleges that the feasibility study contracted for between the RPC and Richard Lambert contained a scope of work substantially similar to that of the Revised Engineering Agreement.  Moreover, although Kenner was not a party to the feasibility study contract, Lambert contends that Kenner induced the RPC to hire Richard Lambert, through the participation of individuals such as Aaron Broussard,[3] Louis

_____

[3] Mr. Broussard is currently the President of Jefferson Parish and, as such, is a representative of Jefferson Parish on the RPC.  At the time of the Original Engineering Agreement and Revised Engineering Agreement, he was the Mayor of Kenner.  After serving as the Mayor of Kenner, he was elected Chairman of the Jefferson Parish Council.  During his term as Chairman, he also served as a representative of Jefferson Parish on the RPC.  Accordingly, since Mr. Broussard was the Mayor of Kenner during the execution of the Original Engineering Agreement and the Revised Engineering Agreement and was a representative of Jefferson Parish on the RPC at the time of and during the time leading up to the execution of the contract with Richard Lambert, Lambert contends that Mr. Broussard participated in inducing the RPC to hire Richard Lambert to circumvent Kenner's contractual obligations to Lambert.

Congemi,[4] and others and based upon Kenner's production of matching funds, in an effort to circumvent Kenner's contractual obligations to Lambert. As such, Lambert argues that Kenner did breach its contract with Lambert.

Furthermore, in his complaint, Lambert originally sued the RPC for intentional interference with a contract. In its opposition to the RPC's motion for summary judgment, however, Lambert abandoned his intentional interference claim and, instead, asserted a claim under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") against Kenner.

Additionally, Lambert sued the DOTD for intentional interference with a contract. This claim, however, was dismissed on January 5, 2005, for lack of subject matter jurisdiction.

## II. PRESENT MOTIONS

On August 15, 2005, both Kenner and the RPC filed their respective motions for summary judgment. These motions had been set for oral argument on August 31, 2005; however, oral argument was postponed until December 21, 2005, due to Hurricane Katrina.

In its motion, Kenner asserts that it did not breach its contract with Lambert. First, Kenner asserts that the scope of work in the RPC's feasibility study contract with Richard Lambert was a planning study, not engineering or design work. Specifically, Kenner contends that Richard Lambert was hired to determine the overall purpose and need for the Project or the development, comparison, and analysis of conceptual alternatives to the route along the western boundary of the airport. Since Lambert was contracted to engineer and design the Project and

---

[4] Mr. Congemi was the Mayor of Kenner at the time of and during the events leading up to the execution of the contract with Richard Lambert. Lambert contends that Mr. Congemi also played a role in inducing the RPC to hire Richard Lambert.

Richard Lambert was contracted to determine the feasibility of continuing the Project and to design alternatives to the Project, Kenner asserts that the scope of work contained in Lambert's contract is not the same as or similar to the scope of work contained in the feasibility study contract. Second, Kenner alleges that it did not breach its contract with Lambert because the RPC, not it, hired Richard Lambert. In addition, Kenner argues that it, whether through current or formal city officials or in any other manner, did not induce the RPC to hire Richard Lambert. As such, since it did not hire Richard Lambert or induce the RPC to hire Richard Lambert, it could not have breached its contract with Lambert.

In opposition to Kenner's motion, Lambert claims that the scope of work in the RPC and Richard Lambert's feasibility study contract is the same as or similar to the scope of work in his and Kenner's contract. Additionally, Lambert alleges that Kenner did induce and/or participate in the hiring of Richard Lambert. Accordingly, Lambert contends that Kenner did breach its contract with him.

In its motion, the RPC first contends that Lambert does not have standing to sue under LUTPA because Lambert is neither a consumer or business competitor of the RPC. Second, pursuant to *American Waste & Pollution Control Company v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1392 (5th Cir. 1991), the RPC claims that Lambert cannot state a cause of action under LUTPA. Third, the RPC asserts that its conduct does not amount to an unfair method of competition or an unfair or deceptive trade practice under LUTPA. Fourth, the RPC argues that Lambert is barred from asserting a LUTPA claim at this stage of the litigation.[5] Fifth, the RPC

---

[5] In its reply memorandum, the RPC asserted that Lambert should not be allowed to assert a LUTPA claim at this stage of the litigation since this is the first time Lambert has ever brought up such a claim. The Court notes that this situation could prejudice a defendant,

claims that it is an arm of the state and, as such, the Eleventh Amendment bars suit against it in

federal court. Lastly, the RPC contends that it is entitled to discretionary immunity under La.

R.S. § 9:2798.1.[6]

In opposition to the RPC's motion, Lambert first contends that he is a business

competitor of the RPC and, thus, has standing to sue the RPC under LUTPA. Second, Lambert

asserts that *American Waste* is not applicable to this lawsuit. Third, Lambert argues that the

RPC's conduct does not amount to an unfair method of competition or an unfair or deceptive

trade practice under LUTPA. Fourth, Lambert argues that he may now assert a LUTPA claim

due to liberal notice pleading requirements. Fifth, Lambert argues that the RPC is not an arm of

the state and, as such, is not immune from suit in federal court under the Eleventh Amendment.

Lastly, Lambert contends that the RPC is not entitled to discretionary immunity.

## III. LAW & ANALYSIS

Summary judgment is appropriate if the record, as a whole, shows that there is no genuine

issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To overcome summary judgment,

"the nonmoving party must come forward with specific facts showing that there is a genuine

---

however, in this case, the RPC was able to adequately address Lambert's LUTPA claim in its
reply memorandum. As such, this Court prefers to address the merits of Lambert's LUTPA
claim rather than dismiss it for untimeliness.

[6] At oral argument, Lambert moved to strike the RPC's reply memorandum asserting that
the RPC failed to comply with Local Rule 5.3E, which concerns certificates of service. The only
new argument in the RPC's reply brief was the discretionary immunity argument. Thus, the only
argument that would be stricken would the discretionary immunity argument. The Court,
however, finds that Lambert was not prejudiced by the RPC's service and, as such, will not strike
the RPC's reply memorandum.

issue for trial." *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
The Court must view the evidence in the light most favorable to the nonmovant and draw all
reasonable inferences in the nonmovant's favor. *Riverwood Int'l Corp. v. Employers Ins. of
Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).

A.     KENNER

Kenner asserts that is entitled to summary judgment because it did not breach its contract
with Lambert.  In order to prevail on its motion for summary judgment, Kenner must
affirmatively show that there is no genuine issue as to whether the scope of work in the Revised
Engineering Agreement was the same as or similar to the scope of work in the feasibility study
contract and/or that Kenner did not induce the RPC to hire Richard Lambert.

Based upon oral argument and a review of the record, including all the relevant contracts,
the Court finds that the scope of work contained in the Revised Engineering Agreement was not
the same as or similar to the scope of work contained in the feasibility study contract.  In the
Revised Engineering Agreement, Lambert was hired to perform services in conjunction with the
design and construction of a north/south roadway running from Airline Highway to the Loyola
Drive/I-10 interchange.  In the feasibility study contract, Richard Lambert was hired to determine
if the Project could be continued and to develop three or four conceptual alternatives to the
Project.  In performing his contractual duties, Richard Lambert developed eight alternatives and
recommended a preferred alternative that, if implemented, would completely abandon the
Project.  Essentially, the scope of work in the Revised Engineering Agreement was design and
construction work.  Whereas, the scope of work in the feasibility study was planning work.
These two scopes of work are not the same or similar.  In fact, the Court has difficulty in seeing

how the scopes of work in these two contracts could be the same or similar since the feasibility study was supposed to recommend alternatives to the Project and, ultimately, recommended that the Project be terminated.

Since the Court has determined that the scope of work in the Revised Engineering Contract was not the same as or similar to the scope of work in the feasibility study contract, the Court need not decide if Kenner induced the RPC to hire Richard Lambert or participated in any way in the hiring of Richard Lambert. The fact that the two scopes of work are not the same or similar is enough to warrant summary judgment in favor of Kenner.

B.    RPC

The RPC claims it is entitled to summary judgment for six reasons. First, it asserts that Lambert does not have standing to sue it under LUTPA. Second, pursuant to *American Waste*, it claims that Lambert cannot state a cause of action under LUTPA against it. Third, it contends that it did not engage in an unfair method of competition or an unfair or deceptive trade practice under LUTPA. Fourth, it alleges that Lambert is barred from asserting his LUTPA claim for the first time at this stage of litigation. Fifth, it contends that, as an arm of the state, it is immune from suit in federal court based on the Eleventh Amendment. Lastly, it argues that it is entitled to discretionary immunity under La. R.S. § 9:2798.1.

The Court will first address the RPC's standing argument. Louisiana has established a private cause of action for any person who is damaged as a result of unfair or deceptive practices in the conduct of trade or commerce if the actions amount to a violation of LUTPA. LUTPA is designed to prevent injury to competition and, in doing so, to protect consumers and business competitors from injury. *See Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1331 (5th Cir.

-10-

1994); *Landrum v. Bd. of Comm'rs of the Orleans Levee Dist.*, 758 F. Supp. 387, 392 (E.D. La. 1991).

Consistent with its purpose, LUTPA only affords consumers and business competitors standing to assert a private right of action. *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192, 1205 (5th Cir. 1992). A consumer is "any person who uses, purchases, or leases good or services." La. R.S. § 51:1402(1). A business competitor is a person who actually or potentially engages in business that competes directly or indirectly with the plaintiff. *Tubos de Acero de Mexico v. American Int'l Investment Corp.*, 292 F.3d 471, 480 (5th Cir. 2002).

At oral argument, Lambert argued that he was a business competitor of the RPC and conceded that he was not a consumer of the RPC. As such, to determine if Lambert has standing to sue the RPC under LUTPA, the Court must determine if Lambert is a business competitor of the RPC.

After reviewing the record, the Court finds that Lambert is not a business competitor of the RPC. Lambert is an engineer whose business is the performance of engineering work for private gain. Moreover, Lambert has been retired since 1995. The RPC is a quasi-governmental agency whose purpose is to coordinate growth and development on a regional level. La. R.S. § 33:140.61. The RPC's powers are set forth in La. R.S. § 33:135. Nowhere in section 33:135 is the RPC empowered to engage in engineering work. In addition, the Executive Director of the RPC testified at his deposition that the RPC does not do engineering or design work.[7] He further testified that the only responsibilities of the RPC are planning, planning-related studies, and

---

[7] Brooks Depo. 126:6-12, 138:12-17, Apr. 13, 2005.

-11-

environmental analysis.[8]  While it may be necessary for the RPC to occasionally contract with private engineers to carry out its duties, this necessity does not make the RPC a business competitor of private engineers.  Therefore, since Lambert is not a business competitor of the RPC, Lambert does not have standing to file suit under LUTPA.

In addition to its lack of standing under LUTPA, Lambert has failed to state a viable cause of action against the RPC under LUTPA.  In *American Waste*, the Fifth Circuit held that LUTPA does not provide a cause of action for activity which is not actionable under Louisiana law.  *American Waste*, 949 F.2d at 1392.  In *American Waste*, the plaintiff asserted a cause of action against the defendant for intentional interference with a contract and also asserted a cause of action under LUTPA.  *Id.* at 1391.  These two claims were based on the same underlying facts. *Id.*  The Fifth Circuit first determined that the plaintiff could not state a cause of action for intentional interference with a contract because the facts of the case did not fit into Louisiana's narrow holdings regarding intentional interference claims.  *Id.* at 1390.  Next, the court was faced with the question of whether intentional interference with a contract could constitute a LUTPA claim.  *Id.* at 1391.  The court held that an untenable claim for intentional interference with a contract cannot form the basis for a LUTPA claim if the same factual allegations that constitute the plaintiff's intentional interference claim, without any additional facts, also constitute the plaintiff's LUTPA claim.  *Id.* at 1392.

In the present case, Lambert originally asserted an intentional interference with a contract claim against the RPC.  Lambert, however, in opposition to the RPC's motion for summary judgment abandoned his claim for intentional interference with a contract and, instead,

---

[8] *Id.* at 138:15-25, 139:1-4.

asserted his LUTPA claim.  Lambert's LUTPA claim is based on the same facts as his intentional interference claim.  In fact, there are no facts which would differentiate his current LUTPA claim from his former intentional interference claim.[9]  Accordingly, Lambert's LUTPA claim is based solely on the same factual allegations as his intentional interference claim.  As such, under *American Waste*, if the Court finds that Lambert could not have sustained a claim for intentional interference with a contract, the Court must also find that Lambert cannot state a cause of action under LUTPA.[10]  *See id.*; *Spillway Invs. v. Pilot Travel Ctrs., LLC*, No. CIV.A.04-2451, 2004 WL 2988491, at *12 (E.D. La. Dec. 14, 2004).  Therefore, the Court must determine the odd question of whether Lambert could have succeeded under his former intentional interference claim—a claim which he intentionally withdrew and conceded at oral argument was futile.[11]

---

[9] At oral argument, in response to the RPC's fourth argument, Lambert argued that the facts of his complaint sufficiently put the RPC on notice of a potential LUTPA claim.  Implicit in Lambert's argument is his contention that the facts of his former intentional interference claim constitute his LUTPA claim.

[10] The Court acknowledges that the plaintiffs in both *American Waste* and *Spillway* were asserting intentional interference and LUTPA claims at the same time.  In the present case, however, Lambert is only asserting a LUTPA claim.  Thus, an argument could be made that *American Waste* and *Spillway* are not applicable to the present case.
    Since Lambert's LUTPA claim is based on the same factual allegations as his intentional interference claim was and would be if it was not withdrawn, the Court, however, will apply the holdings of *American Waste* and *Spillway*.  If the Court were to hold otherwise, it would create a situation in which a plaintiff who asserts both a LUTPA claim and a futile intentional interference claim, which are based on the exact same facts, would not be able to state a claim for either cause of action, but a plaintiff who only asserted a claim under LUTPA, under the exact same facts which would constitute an intentional interference claim, would be able to state a cause of action.  This situation, if allowed, would create an illogical system which would place more importance on procedural headings than on substantive facts.

[11] Perhaps the Court could now stop its analysis of Lambert's possibility of success with an intentional interference claim, considering Lambert, himself, has acknowledged the impossibility of this endeavor.  The Court, however, will finish its analysis.

-13-

The Court finds that Lambert cannot sustain a claim for intentional interference with a contract. In 1902, the Louisiana Supreme Court held that an action for intentional interference with a contract was not recognized under Louisiana law. *Kline v. Eubanks*, 33 So. 211, 213 (La. 1902). This remained the law until 1989. *See 9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 234 (La. 1989). In *Spurney*, the Louisiana Supreme Court recognized a narrow cause of action for intentional interference with a contract, limiting such a cause of action to corporate officers who intentionally and unjustifiably interfere with a contractual relationship between their employer and a third person. *Id*. at 234. Furthermore, the court recognized that a claim for intentional interference has five distinct elements: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) the absence of justification on the part of the officer; and (5) causation of damages to the plaintiff by the breach of the contract or difficulty of its performance brought about by the officer. *Id*. Since *Spurney* was decided, neither Louisiana state courts nor the U.S. Fifth Circuit Court of Appeals have expanded the cause of action to encompass the actions of non-corporate officers. *American Waste*, 949 F.2d 1390; *Spillway*, 2004 WL 2988491, at *7.

In the present case, the RPC is not a corporate officer of a corporation that had contracted with Lambert. As such, Lambert cannot state an intentional interference claim against the RPC. Since Lambert cannot state an intentional interference claim against the RPC and his LUTPA claim is based on the same facts as his intentional interference claim, Lambert, pursuant to *American Waste*, cannot state a LUTPA cause of action.

-14-

Since the Court has determined that Lambert lacks standing to sue under LUTPA and cannot state a cause of action under LUTPA, it is unnecessary for the Court to rule on the RPC's four other arguments.  Lambert's lack of standing and inability to state a cause of action are enough to grant the RPC's motion for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, Kenner's and the RPC's Motions for Summary Judgment are GRANTED.

New Orleans, Louisiana, this ___11ᵗʰ___ day of January, 2005.

UNITED STATES DISTRICT JUDGE

-15-